Happy to hear argument in our first case, number 12-1728, Andochick v. Byrd. May it please the court. My name is George Peterson. I represent Scott Andochick. Erica Byrd and Scott Andochick entered into a marital settlement agreement in 1996. She passed away three and one half years later, but kept Scott Andochick as the beneficiary of her ERISA government benefits. The trial court in this case correctly concluded that Erica, since she had kept him, Scott Andochick, as the beneficiary, that ERISA required the plan administrator to pay Scott Andochick those benefits and no other. Meaning that the plan administrator correctly concluded that under its plan documents and under the applicable case law in ERISA, that it must pay Dr. Andochick those benefits. The issue in this case is whether the ERISA protections extend beyond the actual receipt of those benefits. In this instance, the trial court incorrectly ruled that it did not. The trial court relied on three erroneously decided cases. The first was obviously the most recent before the trial court's decision, was the Third Circus decision in Kessinger. The other two were state law cases. One was Pardee v. Pardee out of Oklahoma, and the other, the last one, was the Swede case out of Michigan. The trial court ordered him to pay the funds over to her parents? It did not, Your Honor. What did it do? It dismissed the declaratory judgment action which we brought. We initially brought the declaratory judgment action asserting that the ERISA protections preempted any claims that Erica Bird's parents had with respect to these ERISA government benefits. And so the only thing the trial court was doing in this instance and what it did in its decision was to dismiss our declaratory judgment action. Now, it certainly did make certain rulings with respect to the issue, and we think that the court was correct in terms of But the effect of it, the reason you're appealing is you agree with what was ordered by the district court here, which is the payment over to the trustee, but you disagree with having to comply with state law. Not precisely, Your Honor. Well, there was a state declaration. You don't call that state law? Judges generally think when they declare something, that's the law. And it was the state court that declared it, so why wasn't that state law? In terms of the state law decision in this case that was out of the Circuit Court of Maryland. You think it's wrong, but it's state law, right? I disagree with the application of it with respect to ERISA, Your Honor. It may be erroneous state law, but all I was saying to you, which I thought was non-controversial, which I thought was entirely consistent with what you were saying in the beginning, was that the district court here decided the ERISA question, decided it in your favor, said that this money should be paid off to the ERISA, to your client, who is the beneficiary under the ERISA plan, but then, in compliance with state law, that person was to pay it off to the parents of the decedent. Our declaratory judgment actually went a little bit further than that, Your Honor. It wasn't just the initial receipt of the benefits. We believe that's uncontroverted in this case, that at this point, Dr. Anduchik was a proper... I know that you don't think that that should have happened, but that is what the state court said should happen, isn't it? I think you're quarreling with me on the wrong grounds. The state court didn't rule that? The state court ruled that he was to sign waivers pre-distribution. And so, yes, Your Honor, I apologize for my confusion over your question, and I do apologize. I don't mean to quarrel with you. And then you were in the midst of talking about precedent, and you said this is inconsistent with three prior cases, but that's the majority of the precedent in this area, correct? In terms of this particular issue, in terms of the... Well, that's the issue we're talking about. I mean, I don't mean all the issues in the world. We're talking about this issue today. Absolutely, Your Honor. This issue is... What does ERISA have to do with anything once the funds are paid over? Well, if you take a look at the applicable U.S. Supreme Court precedent, and in particular we rely upon the Boggs v. Boggs case, that was a case that we believe was misconstrued by the court in Kessinger, by the court in Pardee, and the court in Sweep, which are basically the... Well, the Supreme Court left the question open. It absolutely did. But that's all it did. It didn't decide the question. That's absolutely correct. The Supreme Court in Kennedy absolutely did leave this question open. Judge Floyd, I think that the larger question is you started out saying this is an ERISA case, and Judge Floyd's question brought to mind what my essential question has been here. Once the funds are distributed in accordance with ERISA, what other case can you point to where ERISA then governs things subsequently? Boggs v. Boggs. That's a pre-Kennedy Supreme Court decision, isn't it? It absolutely is. And what I'm talking about is not... I thought you were talking about there was a wealth of Supreme Court law. I'm talking about in any context that ERISA would govern anything between the parties once the ERISA funds are distributed. Boggs v. Boggs. That's it. No, I think the principles extend through to Egglehoff as well, which is the 2001 Supreme Court opinion. But if I can back up and explain the proper interpretation of Boggs v. Boggs, I think it would put in light why the Third Circuit was incorrect and why the Michigan Supreme Court and the Oklahoma Supreme Court were incorrect. But we would be creating a circuit split if we went with you. You would, Your Honor. In fact, the Third Circuit did directly go the opposite way just before the trial court issued on the motion to dismiss and the cross-motion for summary judgment, which the trial court did not rule upon in this instance. If you take a look at the Boggs v. Boggs case, it's the principle that's in that case that I think is important here, and it's one that was missed by many other cases.  It cited to that Boggs v. Boggs case, which obviously is an indication that the Supreme Court viewed it as having some bearing on this particular issue it left open. And Boggs v. Boggs dealt with an arrest of preemption, and what happened was the second wife of a decedent had filed a declaratory judgment action in federal court. She had been sued by the two children of her deceased husband, and they had state law claims in that instance. The state law claims that the children had were based upon not only for future funds that were held by the plan administrator, but they also made a claim in that case for funds that had already been distributed. So their suit against the second wife was not only for post-distribution assets, because they were seeking that as recovery, but they were also seeking the future benefits that were going to be distributed by the plan administrator down the road. The Supreme Court made no distinction between the post-distribution and the pre-distribution funds held by the ERISA plan administrator in that case. In particular, the Supreme Court characterized and rejected two of the stepchildren's arguments. First, the stepchildren argued that their state law claims affected only the disposition of plan proceeds after they had been dispersed by the Bell South Retirement Services, which was the decedent's employer. The Supreme Court rejected that in Boggs. The second argument that the stepchildren made in Boggs was that ERISA was not concerned with the second wife's community property obligations after she receives the survivor annuity payments because they failed to implicate any regulatory concern. Those were the two arguments that were advanced by the stepchildren, and they essentially asserted their state law claims over these proceeds not only that had been distributed, but that would be distributable in the future. And it's very clear from the Court's opinion that they were deciding both. They made no distinction. The Supreme Court in Boggs found that there was a risk of protection. It said that the principal object of the statute is protect plan participants and beneficiaries. And so it started off with that premise that, of course, the axis around, well, actually what they ended their opinion with, was it said that the axis around which ERISA's protections revolve involved concepts of participant and beneficiary. It rejected the argument, and this is at 854, the Supreme Court opinions in Boggs. It does not matter that the response has sought to enforce their rights only after the retirement benefits have been distributed. See, the problem with Boggs and the other Supreme Court case is it deals with undistributed funds. That's why I keep asking you, and you have one, I guess, state court case that is on your side of this, and neither of the Supreme Court cases deal with distributed funds, funds that have already been distributed. Actually, that's not quite correct, Your Honor, under the Boggs case. And I can point the court to the particular one I'm talking about. If you look at 837 of the Supreme Court's opinion, they talk about the two sons' claims. It says, and I can... Go ahead. It says, after Isaac's death, two of the sons filed an action in state court requesting the appointment of an expert to compute the percentage for the retirement benefits they would be entitled to as a result of Dorothy's attempted testamentary transfer. Dorothy was the previous deceased wife. They further sought a judgment awarding them a portion of the IRA, the ESOP shares of AT&T stock, the monthly annuity payments received by Isaac during his retirement, and Sandra's survivor annuity payments both received and payable. So they were seeking from the second wife in that case, the second wife in Boggs, they're seeking claims not only for annuity payments she had received, but also that would be payable... Did they get the annuity payments that she had received? I apologize? Did they recover the annuity? Well, then how is that authority for you? Because the proposition in Boggs is this, is that it extends to not only the pre-distribution... People can claim anything until you get a resolution saying that, yes, you're entitled to it under ERISA. I don't see how that can count as authority for your position. The Supreme Court made no distinction between the claims. They didn't say... They rejected them all, but it doesn't have to make... When we decide cases, you don't have to say every reason why the people are wrong. No, you don't. I agree with that, Your Honor. But I think in this case, there was no carve-out of the funds that had been distributed. No separate discussion of the fact, so that therefore you take from that that they must have been treating them as subject to ERISA. I think you have to, Your Honor, because... Well, that's what your argument is. It is, Your Honor. And it's the principle that I think was missed by the court in Kessinger most clearly, and I can focus on that. When the court in Kessinger was talking about undistributed funds, if you actually look at what they were citing to in the Boggs case, they were referring to the first wife, the deceased wife's undistributed shares. They were not referring to the distributed shares that were at issue, because what was at issue in this case was, in fact, the funds that had been paid to the second wife under the annuity had been paid, and it would be payable in the future. And so when the Kessinger court... Basically, what they said was that it only involved... That Boggs was distinguishable because it only involved undistributed plan benefits. They misunderstood the facts of the case, and that was an error that was also committed by the court in Sweeb and the court in Pardee. They failed to distinguish and understand that it was also post-distribution benefits which had protections from ERISA. We see also in the nature of the protections that are extended to benefits in Egelhoff as well that was a decision that was decided in 2001. Obviously, an ERISA issue in that case was the application of the state of Washington's automatic beneficiary revocation statute. And, of course, it was based on a different issue, but it was from the court's opinion that they made statements with respect to the protections that should be accorded to ERISA benefits even after post-distribution, specifically in footnote 3. I'll find that real quick. I apologize, Your Honor. In footnote 3, the Supreme Court talked about the... and they addressed the dissenting view, the dissenter's views in Egelhoff, that a plan administrator could simply just sit back, let the parties work it out, and plead the funds. And the majority in that case rejected that in footnote 3, saying that that would just move the issue down the road and basically pass on the litigation costs to the beneficiaries. So it specifically rejected that idea and notion. And you can see from that concept that there is, at least from Egelhoff and following through from Boggs, there is the notion of protection for post-distribution benefits. In each of the cases that were cited and relied upon in the trial court, I think they misunderstood the case in Boggs. And I can go through and identify those for you. I know that I have one minute left with respect to my opening position or my opening argument. Simply put, the cases that were relied upon by trial court, obviously I've addressed the Kessinger case. The case in the Supreme Court of Michigan, which is SWEB, made the error in making a distinction between Boggs or trying to distinguish Boggs based on the fact that Boggs dealt with an insurance policy. But as we know from this court's precedent in Boyd v. Metropolitan Life, there is no distinction from ERISA's perspective. It also, in the SWEB case, talked about the funds not being in the hands, or I'm sorry, being ones that are distributed. They have no protections from ERISA, and that runs contrary to what was decided in Boggs v. Boggs. Parge made the same error as well. And, Your Honor, I'd like to save the rest for rebuttal unless you have questions. Thank you. Thank you, Your Honor. May it please the Court, I'm Carl Pilger. I represent Ronald and June Bird in this matter. Our position is the district court was correct in dismissing the count involving ERISA preemption, which was count two of the amended complaint. When the benefits get dispersed from this plan, they get dispersed to Dr. Anderchik. At that point, the plan has no longer any involvement with this. And what happens to the money at that point, vis-à-vis the Birds v. Dr. Anderchik, to recover money that may be due under the marital separation agreement, has no effect on any operation of the plan whatsoever. It puts no burden on the plan at all to allow the Birds to seek this money from Dr. Anderchik once in its hands. Where is the money now? The money is in different places right now. Some of it is in the registry of the court in the Eastern District of Virginia. Some of it is being held by the various insurers. There are basically three policies, two of which are ERISA, one is non-ERISA. But they are all basically being held by order of various courts in status quo. So they're not either in the hands of Dr. Anderchik or the Birds. Under the plan document rule, enforcing that marital separation agreement doesn't preclude the doctor from getting what's coming to him quickly, because that's the purpose of the plan document rule. Rather, it precludes the doctor from keeping what's coming quickly. Is that a fair statement? That's a fair statement. There's no plan document rule that says he gets to hang on to it. He's voluntarily made contracts or other obligations whereby that money gets transferred to someone else by spending it, or in this case, by a mutual agreement that previously entered it as an order in Maryland. So is there any disagreement among the parties about what would happen if we affirmed? There may be. From our position, if the court affirms, you're affirming the dismissal of the action that was brought by Dr. Anderchik against the Birds, these declaratory judgment acts. So that is dismissed at this point. And what proceeds at this point is the Maryland litigation, which is currently up in front of the Maryland Court of Special Appeals appealing the judgment of Judge Craven. So that rolls on on its own basis. And if we should reverse, then that action is moved? The action in Maryland? Well, I think that both cases move along. If you reverse and send this back down for discovery and trial in the Eastern District, then both cases move along at that point. How long has the fight been going on? I think about a year, year and a half at this point. And it does cause some consternation and some deep thinking, I hope, on the part of counsel when you have two cases like this going on at the same time. However, we did not bring the case in Virginia. This was kind of a preemptive strike, if you will, to file a declaratory judgment action against the Birds a few days before they brought their action in Maryland where the divorce occurred to enforce the terms of the divorce order. If I can speak to preemption for a moment, we cited several cases at the beginning of our brief that gives a bit of a history of the law of preemption in the circuit. And as we say there, just because something has something to do with a plan at some point does not mean that a risk of preemption goes on forever, just because something relates in some tangential way to a plan. We feel that the District Court called it correctly here in saying once the money is out of the plan, it's in the hands of someone else, then there are no implications on the core purposes of ERISA, which were set forth in Kennedy and other cases, being a uniform and efficient plan administration, avoiding double liability of the plan, and getting benefits to beneficiaries quickly. We believe the District Court correctly viewed cutting off preemption at the point where the money is transferred from the plan to the beneficiary because none of these core purposes can be affected at that point. The District Court I think also took care to observe the law with respect to the impact on state law, and that in cases like Retail Industry Leaders v. Fielder, a decision of this court in 2007, ERISA is not presumed to supplant state law, and the court looks to the nature and effect of the state law on ERISA plans. And one of the areas of traditional state regulation is divorce, and the enforcement of the Marital Settlement Agreement has a direct effect on state interest there, whereby it does not have, in this case the way this is set up, an interest or an effect on the plan. Therefore preemption should not extend past the point where the money is paid out of the plan. Dr. Andersek argues a lot in his brief that this is a burden on him to litigate, that he takes language that really applies to plan administrators and not wishing to burden plan administrators and saying, well, I'm burdened by this. I'm burdened by this litigation over the Marital Settlement Agreement. And our response to that is he's not a plan administrator. He voluntarily put himself in the position he is in, presumably for a quid pro quo in the Marital Settlement Agreement. It wouldn't matter if he was a plan administrator, would it? Well, he... For purposes of your argument, if every other piece of the facts was the same in this case, that is that they had entered into this divorce agreement whereby she would get all the ERISA benefits, even if he was the plan administrator. He'd, as plan administrator, distribute the assets to himself and then, according to you, would be bound to distribute them to her parents. He would be. So would it make any difference if he was plan administrator? I'm just saying his argument is that he's trying to cloak himself in... I understand that. But I understand this classic lawyer telling me it's not this case. I understand it's not this case. But if he was the plan administrator, would it make any difference? Well, the plan administrator should not be subjected to litigation. So that is a fair thing to say. But under the core principles of ERISA. So you'd have to wait until... And does the plan administrator retain this cloak of immunity from suit forever and ever? Or once the plan administrator distributed the funds to himself, then could your clients sue? I don't understand where that goes. Yes. And perhaps this is not a strong point. I'm just commenting on an argument being made by Dr. Anderchik that I think has no weight to it. In that, as a plan beneficiary, he has no cloak to say, I shouldn't be subjected to this. I shouldn't be subjected to litigation. And my point is he voluntarily put himself in a position where he's subjected himself to that. He didn't have to enter into the marital settlement agreement, but he chose to. Well, of course, his argument is that his ex-wife could have taken him off as her beneficiary, and she did not. Correct. So, I mean, we have a lot of could have done but didn't do. So, I mean, I'm not sure that argument is so persuasive. Talk to me about your race judicata, collateral estoppel, all those arguments. Well, as alternative basis for the upholding of the decision on count two, it was our application to Judge O'Grady that the decision by Judge Craven in Montgomery County constituted basically race judicata or collateral estoppel. Are you not pressing that argument anymore? I am. No, it's in our brief. I understand that, but you hadn't said anything about it this morning, so I wondered maybe you were waiving. Yes. Well, I wanted to address the main point. I think Judge O'Grady got it correct on the preemption issue, and his ruling was correct. These backup arguments, we do press them, which is Judge Craven made a decision in the hearing in Montgomery County whereby it was argued to him by Dr. Anichik's attorneys and briefed by them that ERISA preemption applied. He came out with a decision saying basically Dr. Anichik needs to sign the waiver to get this into the plan and virtually be a planned document. But didn't he expressly not decide the ERISA issue? So how could that be preempted? I mean, how could it be race judicata? In that by ordering what he ordered, he at least implicitly overruled the objections made to his approach by the other side where they said you can't do this under ERISA. And by going forward, he at least implicitly said, no, I disagree, and I'm going to order this. Now, I agree. His opinion and his order did not expressly treat ERISA. They expressly didn't treat ERISA. He said, I'm not reaching the ERISA. He said it at some point. Well, I think Judge O'Grady's opinion basically said that, that he felt that Judge Craven was not reaching ERISA, and he cites a particular statement made by Judge Craven in that December hearing. And that, if you look to the citation, which is in Judge O'Grady's opinion, he's referring to a particular statement of Judge Craven where Judge Craven says, I'm going to order Dr. Anderchik to sign this. I don't know if this will have any effect once it gets to the plan administrator. And I think that was the limit of what Judge Craven was saying. He said he didn't have the plan administrator in front of him. He didn't know if it was going to be timely, effective in the right form perhaps. That's what I took away from it, and that he's going to order it and see what the plan administrator does. If you reread that particular statement of Judge Craven, I don't view that as being broad enough to be, I'm just not going to deal with ERISA at all. I'm going to punt on the issue. I think what Judge Craven is saying, I'm going to order this because the judgment the court requires it. I don't know what the plan administrator will do with it. And I think that's a different thing than saying, I just refuse to treat ERISA. I'm just not going to deal with it. That's what I take away from that statement in the record. The Virginia court's decision isn't final either. So how could it have reached Judicata? You know, it's on appeal. The Maryland court? Yeah. The Maryland court decision, under Maryland laws, we cite to in the brief, once something has been decided, even though it's on appeal, it is a final decision and needs to be treated that way. We cite to the Maryland law on that, Your Honor. Well, I thought I knew the Maryland law on that. Okay. Maybe there's a new Maryland law. Or maybe it's real old. I do want to bring up another issue, if I may, at this point, concerning the reply brief. In the reply brief, a new issue was brought in that we think is improper. At pages four to six of the reply brief, basically Dr. Anduchik is arguing a lack of standing on the part of the Byrds, saying they have no interest in this, that they are not entitled to deal with these property issues. This was the argument that was made in the district court and also in the Maryland court. It was count one in the amended complaint. Dr. Anduchik wanted a declaration that the Byrds had no standing, and he lost on that point. In his opening brief, Dr. Anduchik does not treat the issue. He treats it only in his reply brief, and under cases like Cavallo v. Star Enterprise in 1996, a decision of this court that's considered waived, and I just wanted to point out that we do object to it because we've had no ability to respond to that issue in writing. I do want to make a couple of comments, if I may, about Boggs and Egelhoff, unless the court has heard enough already on these cases. But with respect to Boggs, that was where a community property law in Louisiana changed basically the structure and balance of ERISA, and that's what the court found. The analysis of Boggs, from our standpoint, is that Boggs went in and changed one of the core purposes and one of the core events of this ERISA plan. That is how it's structured, who's entitled to it. It also offended the anti-alienation provisions of ERISA as it was an interest enforceable against the plan itself, and that's at 520 U.S. 851. The Boggs case talked about a state law that ventured into an intrusion on the core aspects and core purposes of ERISA, and therefore it was found not to be proper and preemption came in. Very different here. We have a set of undistributed assets where a claim could be made against the undistributed assets in the plans as you could in Boggs, or they tried to in Boggs. Here we don't have that. It's completely outside of the plan. As far as Egelhoff, this was a state law to override beneficiary designations upon divorce. Virginia had a similar statute. This likewise violated a core concern of ERISA because the plan administrator had to pay in accordance with state law as opposed to beneficiary designations, and that changed the way the plan administrator had to do his business, and that is an intrusion on the core concerns. So by contrast in this case, I think both Judge O'Grady and the similar case of Kensinger found that there's no burden on the plan. Once the money comes out of the plan, there is no burden on the core purposes or core concept of ERISA. Preemption should not apply. And so the parties are left to their own devices. Thank you very much. Just to clarify, the plan administrator was not a party in Boggs v. Boggs. It was stepchildren v. stepmother. They were not involved at all. It was basically an attempt to enforce a particular declaration that ERISA protected the second wife's, not only the funds that she received under the ERISA plan, but also that would be payable to her in the future. So I certainly wanted to clarify that issue. Number two, the issue with respect to the Maryland court is a little bit odd. Dr. Andacek has been ordered over there not to receive the funds. So basically he is not in possession of them. They have not been distributed to him. It runs a little bit contrary to what Judge O'Grady, I think, appropriately ruled with respect to ERISA, and that is that the plan administrator had to pay Dr. Andacek. Now he's under a competing order in Maryland under the pain of contempt not to. He's also under an order to sign waivers which would effectively bypass him in contrast to what Judge O'Grady ruled with respect to ERISA. So I wanted to point that out. I know that those issues will be decided in Maryland as a matter of Maryland state law. I don't believe that the— Are you still maintaining that there is a dispute as to the meaning of the marital settlement agreement? I'm maintaining that there is a dispute as to its applicability in the context of ERISA. The issue of— Not what it means, though. That's correct, Your Honor. I just don't think it applies because of ERISA. That's correct, Your Honor. That issue is going to have to be decided as a matter of state law over in Maryland, not as a matter of ERISA law. And we don't believe that Judge Craven decided it within the context of ERISA. And if I could explain myself on the meaning of that. The court in Kennedy certainly did acknowledge that there were issues of federal common law waiver. In Kennedy, they refused to enforce the marital settlement agreement— I'm sorry, the marital settlement agreement in Kennedy and a divorce decree, which basically the former wife had waived her rights to benefits in the ERISA plan. The U.S. Supreme Court refused to enforce that vis-a-vis the plan administrator in terms of federal common law waiver. And it acknowledged that there was a concept of federal common law waiver, but what it did was reject the idea that somehow a state divorce decree or state law decree was an effective waiver in and of itself. The court in Kennedy did not say what an effective waiver would be within the context of ERISA. And that's one thing that's held open by the court in Kennedy. If you look at the concept of waiver in Kennedy, what they're talking about in the majority of the opinion is a qualified disclaimer under 26 U.S.C. 2518, which is an IRS code section, which says essentially you have to do certain very specific things within nine months of the death of a decedent to disclaim an interest. And so when they're talking about the context of waiver in Kennedy, they're truly talking about the issue of a qualified disclaimer in that context. They go no further than that in Kennedy. So although the state of Maryland, Judge Craven, decided the issue as a matter of state law, he did not decide it as a matter of ERISA governed law or what might be effective under ERISA. And so I want to make sure I'm very clear on that. The issue as a matter of state law will be appealed and is being appealed over in Maryland, but not with respect to ERISA. In terms of res judicata, I think it's abundantly clear that Judge Craven was not deciding this issue. I don't know if the court needs to hear anything further about that from our perspective. But clearly in order for res judicata to apply, it has to actually be argued and decided. And I think from the context of the transcript, which the entire transcript is in the record, Judge Craven clearly was not deciding this issue. I think Judge O'Grady got that absolutely right in terms of it not being res judicata. One final point, and it goes to the plan document rule. And obviously the one thing that comes across crystal clear from the Kennedy decision is that the plan document rule is going to apply vis-a-vis the plan administrator. It's absolutely crystal clear. The other issue is in terms of what happens after those benefits are distributed. And obviously that's an issue that's left open by footnote 10. The court cites the BOGS. The court obviously viewed its decision in BOGS as having some relevance. Unless you have further questions, Your Honors, I would conclude with asking you to reverse the trial court this case. Thank you very much.
judges: Diana Gribbon Motz, Robert B. King, Henry F. Floyd